UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN E. SCHWARZ and REENA LEVIN, | ) | |
| | ) | |
| Plaintiffs, | ) | 11 C 501 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| SELLERS MARKETS, INC., JAMES SELLERS, | ) | |
| DEBORAH SELLERS, TENNYSON WEST LLC, | ) | |
| BANCROFT PARTNERS LLC, MICHAEL SCHMITZ, | ) | |
| DAVID SLOAN, AQUILLIAN INVESTMENTS LLC, | ) | |
| and RESTAURANT SOLUTIONS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiffs Steven E. Schwarz and Reena Levin brought this action against James Sellers, Deborah Sellers, Sellers Markets, Inc., Tennyson West LLC, Bancroft Partners LLC, Michael Schmitz, David Sloan, Aquillian Investments LLC, and Restaurant Solutions, Inc., alleging violations of SEC Rules 10b-3 and 10b-5, 17 C.F.R. §§ 240.10b-3, 240.10b-5, the Illinois Securities Act, 815 ILCS 5/1 *et seq*., and § 25401 of the California Corporation Code, as well as breach of contract, fraudulent inducement, and breach of fiduciary duty.  Schwarz, an attorney, is representing both himself and Levin, his spouse; for ease of reference, they together will be referred to as "Schwarz."  Based exclusively on a forum selection clause in the parties' contract, all Defendants but one have moved to dismiss this case for improper venue under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a) or, alternatively, to transfer the case to the Northern District of California under § 1406(a).  For the following reasons, this case is transferred to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

**Background**

Sellers Markets is a restaurant business in San Francisco, California, whose principals are James Sellers and Deborah Sellers.  In June 2006, hoping to open a second location in San Francisco, the Sellers decided to solicit additional investors, including Schwarz.  According to the complaint, James Sellers told Schwarz that, if he invested, he could redeem his shares after three years for their purchase price plus five percent interest.  In reliance on that alleged promise and also on financial information provided by some of the other defendants, Schwarz purchased $40,000 of Sellers Markets Series B Preferred stock pursuant to a contract dated June 27, 2006, and styled Sellers Markets, Inc. Amended and Restated Investors' Rights Agreement ("Agreement").  Doc. 41-1.  On July 17, 2009, Schwarz asked to redeem his shares for their purchase price plus five percent interest.  After nearly a year's worth of correspondence, James Sellers sent Schwarz an email denying the request.

Schwarz filed this suit in January 2011.  Shortly after being served with summons, Sellers Markets, James Sellers, and Deborah Sellers filed a motion to dismiss for improper venue or, in the alternative, to transfer to the Northern District of California.  The motion cites Rule 12(b)(3) and 28 U.S.C. § 1406(a) as authority for dismissal and § 1406(a) as authority for transfer; it does not purport to seek transfer under 28 U.S.C. § 1404(a).  The motion is premised on a forum selection clause in the Agreement, which reads:

> 7.12    Jurisdiction; Venue.  With respect to any disputes arising out of or related to this Agreement, the parties consent to the exclusive jurisdiction of, and venue in, the state courts in San Francisco County in the State of California (or in the event of exclusive federal jurisdiction, the courts of the Northern District of California).

Doc. 41-1 at 25.  The other defendants were served with summons after the motion was filed; with one exception, they have joined the motion.  The exception is Restaurant Solutions, Sellers

Markets' accountant, which has moved under Rule 12(b)(2) to dismiss for lack of personal jurisdiction on the ground that it did not have the requisite contacts with Illinois.  By agreement of the parties, Restaurant Solutions' motion has been stayed pending resolution of the motion to dismiss for improper venue or to transfer.

## Discussion

The parties' submissions raise three questions.  The first is whether the Agreement's forum selection clause is mandatory or permissive.  The second question, reached only if the clause is mandatory, is whether the clause is valid and enforceable.  The third question, reached only if the clause is valid and enforceable, is whether the case should be dismissed, transferred, or neither.

## I.      Whether the Agreement's Forum Selection Clause Is Mandatory

Schwarz maintains that the Agreement's forum selection clause is permissive rather than mandatory.  Schwarz's premise—that a permissive clause, being permissive, does not demand that litigation proceed in the designated forum, and thus cannot be invoked to dismiss or transfer a lawsuit brought in a non-designated forum—is correct.  *See Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 761-62 (7th Cir. 2006).  But Schwarz's classification of the clause as permissive is incorrect.

A forum selection clause is mandatory where its "language is obligatory" and "clearly manifests an intent to make venue compulsory and exclusive." *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 756 (7th Cir. 1992).  The clause here provides that "the parties consent to the exclusive jurisdiction of, and venue in, the state courts in San Francisco County in the State of California (or in the event of exclusive federal jurisdiction, the courts of the Northern District of California)."  The clause's meaning is pellucid: Venue is exclusive in the

-3-

California state court sitting in San Francisco County, unless there is exclusive federal jurisdiction over the suit, in which case venue lies exclusively in the Northern District of California.  There is exclusive federal jurisdiction over this suit because Schwarz brings claims under SEC Rules 10b-3 and 10b-5.  *See* 15 U.S.C. § 78aa ("The district courts of the United States … shall have exclusive jurisdiction … of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder."). Because the clause makes venue compulsory and exclusive in the Northern District of California, it is mandatory.  *See Muzumdar*, 438 F.3d at 761 (clause providing "JURISDICTION AND VENUE OVER ANY DISPUTES ARISING OUT OF THIS AGREEMENT SHALL BE PROPER ONLY IN THE FEDERAL OR STATE COURTS IN DALLAS COUNTY, TEXAS" is mandatory); *Cont'l Ins. Co. v. M/V ORSULA*, 354 F.3d 603, 607 (7th Cir. 2003) (same for clause providing that any suit "arising out of the goods carried under this Bill of Lading shall, whenever the port of loading or the port of discharge named on the face hereof is in the United States of America, be brought only in the United States District Court having admiralty jurisdiction at the USA port of loading or USA port of discharge, as the case may be, to the exclusion of any other court or forum"); *Paper Express*, 972 F.2d at 756 (same for clause providing "the parties agree that in any dispute jurisdiction and venue shall be in California") (internal quotation marks omitted); *Piechur v. Redbox Automated Retail, LLC*, 2010 WL 706047, at *3 (S.D. Ill. Feb. 24, 2010) ("By agreeing to submit to the 'exclusive jurisdiction' in a particular forum, the parties in this case have manifested their intent to make that venue exclusive and to exclude venue in all other jurisdictions.").

**II.     Whether the Agreement's Forum Selection Clause Is Valid and Enforceable**

Settled law holds that a mandatory forum selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). "The Supreme Court has construed this exception narrowly: forum selection … clauses are 'unreasonable' (1) if their incorporation into the contract was the result of fraud, undue influence or overweening bargaining power; (2) if the selected forum is so gravely difficult and inconvenient that [the complaining party] will for all practical purposes be deprived of its day in court; or (3) if enforcement of the clauses would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision." *Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 160 (7th Cir. 1993) (citation and internal quotation marks omitted). Schwarz advances several arguments to support his submission that the clause here is unreasonable, invalid, and unenforceable. None have merit.

First, Schwarz contends that Defendants engaged in "fraud and overreaching" by giving him only two days to decide whether to invest in Sellers Markets, by telling him that he would need to "move quickly," and by "pressur[ing]" him to sign and return the pertinent documents. Doc. 50 at 29-30. Schwarz claims that during those two days, he was sent 182 pages of documents, "in complex legalese and containing boilerplate language," "buried" among which was the Agreement's forum selection clause. *Id*. at 30. These circumstances do not rise to the level of fraud or undue influence. Schwarz is an experienced attorney who, according to a fee petition filed earlier in the case, commands $750 per hour. Doc. 36 at 7-8. He had sufficient assets at his disposal in 2006 to be in the fortunate position of contemplating a completely discretionary $40,000 investment in a restaurant business in San Francisco. If Schwarz believed

-5-

he had insufficient time to review 182 pages of documents in the two days given him—a task

that would be second nature to a $750 per hour lawyer—he could have walked away from the

investment and been no worse for the wear.  All this made Schwarz a sophisticated party faced

with a highly discretionary choice, not "a hapless consumer" subjected to a gun-to-the-head

moment.  *IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc.*, 437 F.3d 606, 610 (7th Cir.

2006).  As the Seventh Circuit has made clear, litigants like Schwarz in circumstances like these

cannot avoid a forum selection clause by claiming to have been the victim of fraud or

overreaching:

> The appellants were parties to a somewhat sophisticated business deal.  It is
> hard to conclude that they would have signed a contract worth more than
> $100,000 without considering its provisions.  Contrast this situation with
> one involving a truly nonnegotiated contract.  In *Carnival Cruise Lines, Inc.
> v. Shute*, 499 U.S. 585 (1991), the Supreme Court held that even a forum
> selection clause in a commercial passage contract—that is, a ticket for a
> cruise—was enforceable.  The forum selection clauses in these cases are
> enforceable.

*Muzumdar*, 438 F.3d at 762; *see also Paper Express*, 972 F.2d at 758 (enforcing forum selection

clause where "the parties to this contract are two sophisticated businesses, and nothing in the

record indicates that [the party attempting to avoid the forum selection clause] was vulnerable or

disadvantaged in the negotiations").

Second, noting that an "inference of fraud may arise if a clause is actually buried in

illegible fine print," Schwarz submits that the forum selection clause "is not highlighted and no

attention is drawn to it."  Doc. 50 at 30 & n.9.  But as Schwarz correctly concedes, "the typeface

of the clause is admittedly legible and not any finer than the rest of the print on the page."  *Id*. at

30 n.9.  Given this, the Agreement's presentment of the clause gives rise to no inference of

fraud.  *See Nw. Nat'l Ins. Co. v Donovan*, 916 F.2d 372, 377 (7th Cir. 1990) ("There was no

burial in fine print here.  The print is small, but it is not fine; it is large enough that even the pale copies in the appendix on appeal can be read comfortably by the author of this opinion, with his heavily corrected middle-aged eyesight. … The clause could of course be made even more conspicuous, but highlighted in this fashion it would throw the other clauses into shadow—inviting litigation over *their* validity.").  This is so even if Schwarz did not read the clause before signing the Agreement.  "[A] party to a contract has an obligation to read its provisions.  It is a fundamental principle of contract law that a person who signs a contract is presumed to know its terms and consents to be bound by them."  *Bonny*, 3 F.3d at 160 n.10; *see also Paper Express*, 972 F.2d at 757 ("a party who agrees to terms in writing without understanding or investigating those terms does so at his own peril").

Third, Schwarz maintains that "enforcement of the clause would deprive [him] of [his] day in court" because he is not a member of the bar of the Northern District of California, because local counsel would be required to proceed there, because the Sellers' attorney told him that he would have "difficulty finding a San Francisco lawyer to represent [him] in light of the relatively low amount in controversy," and because even if he were admitted *pro hac vice* in the Northern District of California, he "would still incur huge expenses in airfare, lodging, and missed work to act as lead counsel in San Francisco."  Doc. 50 at 25, 29.  These circumstances do not make it "so gravely difficult and inconvenient that [Schwarz] will for all practical purposes be deprived of [his] day in court."  *Bonny*, 3 F.3d at 160.

Finding an attorney to handle a $40,000 dispute may not be easy, but it is eminently possible.  If Schwarz retains local counsel but is admitted *pro hac vice* and continues to take the lead in litigating this matter, perhaps the California court would allow Schwarz to attend most if not all pretrial hearings by telephone.  But even if Schwarz takes it upon himself to travel to San

Francisco to attend court hearings, "additional expense does not necessarily invalidate a forum-selection clause since [Schwarz] was presumably compensated for this burden by way of the consideration [he] received under the contract." *Paper Express*, 972 F.2d at 758.  "Whatever inconvenience [Schwarz] would suffer by being forced to litigate in a court in [California] was foreseeable at the time that [he] agreed to" the forum selection clause. *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 526 (7th Cir. 2001).  The time for Schwarz to have weighed whether the clause would terribly disadvantage him given the $40,000 at stake was when he signed the Agreement.  *See Abbott Labs. v. Takeda Pharm. Co. Ltd.*, 476 F.3d 421, 426 (7th Cir. 2007) (when signing the agreement with a forum selection clause, the party attempting to evade the clause "could and no doubt did consider the potential inconvenience of litigating in Japan, but decided to risk it," and "is bound by its choice").

All this would be so even if none of Schwarz's claims permitted fee-shifting, but as it happens Schwarz seeks relief under the Illinois Securities Act, which allows prevailing plaintiffs to recover their attorney fees.  *See* 815 ILCS 5/13A ("If the purchaser shall prevail in any action brought to enforce any of the remedies provided in this subsection, the court shall assess costs together with the reasonable fees and expenses of the purchaser's attorney against the defendant.").  This places Schwarz in a position comparable to the thousands of civil rights plaintiffs across the country who, in light of the fee-shifting provision of 42 U.S.C. § 1988, are able to find counsel to work on contingency despite seeking relatively modest damages.  In the end, whether fee-shifting is available or not, it cannot be said in this case that enforcing the forum selection clause would deprive Schwarz of his day in court.

Finally, Schwarz argues that enforcing the clause would contravene the strong Illinois public policy of "protect[ing] Illinois residents from securities scams."  Doc. 50 at 30-31.

-8-

Accepting this argument would eviscerate the effectiveness of forum selection clauses, as plaintiffs alleging misconduct by their contractual co-parties regularly invoke common law principles or statutes that implement their State's policy to protect its residents from fraud or other wrongs.  In this case, there is no reason to believe that the policies underpinning the state and federal laws invoked by Schwarz would not be served as well by a California court as it would be this court.  Accordingly, enforcing the Agreement's forum selection clause would cause no offense to Illinois public policy.

## III.    Whether the Forum Selection Clause Warrants Dismissal, Transfer, or Neither

The remaining question is whether the forum selection clause warrants dismissal under Rule 12(b)(3) or 28 U.S.C. § 1406(a), transfer to the Northern District of California under § 1406(a), or some other result.  This inquiry is more complicated than it might appear at first glance, involving a distinction in Seventh Circuit precedent between motions to dismiss under Rule 12(b)(3) for "improper venue" and motions to dismiss or transfer under § 1406(a) due to "a case laying venue in the wrong … district."

The first provision invoked by Defendants, § 1406(a), provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  Section 1406(a) can be invoked only if venue is improper in the district where the case was brought.  *See Wild v. Subscription Plus, Inc.*, 292 F.3d 526, 529 (7th Cir. 2002) ("Section 1406(a) of the Judicial Code provides that if a suit is brought in a district that is not a proper venue under 28 U.S.C. § 1391, the judge can transfer it to any district 'in which it could have been brought.'").  That is, § 1406(a) cannot be invoked if venue is proper in the district where the plaintiff filed suit.  *See In re LimitNone, LLC*, 551 F.3d 572, 575 (7th

Cir. 2008); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28 n.8 (1988) ("The parties do not dispute that the District Court properly denied the motion to dismiss the case for improper venue under 28 U.S.C. § 1406(a) because respondent apparently does business in the Northern District of Alabama.  See 28 U.S.C. § 1391(c) (venue proper in judicial district in which corporation is doing business).").  Defendants offer two reasons why venue is improper in the Northern District of Illinois for purposes of § 1406(a).  Both lack merit.

First, Defendants contend that venue does not lie here under any federal venue statute. That is incorrect.  Because Schwarz's claims under SEC Rules 10b-3 and 10b-5 arise under federal law, venue is governed by § 1391(b).  Section 1391(b)(2) provides that venue is proper in any district where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).  The gist of this lawsuit is that Defendants defrauded Schwarz and breached the Agreement.  Numerous email and telephonic communications, as well as contract documents and prospectuses, are alleged to have been directed to Schwarz at his home in the Northern District of Illinois.  Moreover, the Sellers filed securities-related documents with the Illinois securities authorities.  Doc. 50-5 at 3.  These circumstances are more than sufficient to establish venue in this District under § 1391(b)(2).  *See YES Lifts, LLC v. Norman Indus. Materials, Inc.*, 2011 WL 1770458, at *5 (N.D. Ill. May 9, 2011) (venue proper where defendant sent payments and documents to district); *Fogelson v. Iatrides*, 2000 WL 631293, at *3 (N.D. Ill. May 12, 2000) (venue satisfied by "a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action") (citations omitted).  The circumstances also are sufficient to establish venue under the special venue provision applicable to federal securities cases, 15 U.S.C. § 78aa, which provides that "[a]ny suit or action to enforce any liability or duty

-10-

created by this chapter or rules and regulations thereunder … may be brought in any such district," with "such district" meaning "the district wherein any act or transaction constituting the violation occurred."  *See Hilgeman v. Nat'l Ins. Co. of Am.*, 547 F.2d 298, 301-02 & n.11 (5th Cir. 1977) (sending premium payment notice to the forum sufficient to establish venue even if defendant was not physically present in the forum); *Investors Funding Corp. of N.Y. v. Jones*, 495 F.2d 1000, 1002-03 (D.C. Cir. 1974) (venue proper in the forum where reports were required to be filed); *Bath Indus., Inc. v. Blot*, 427 F.2d 97, 114 (7th Cir. 1970) (an act or transaction within the forum is sufficient in an action under the 1934 Act if it "represents more than an immaterial part of the allegedly illegal events"); *Poling v. Farrah*, 131 F. Supp. 2d 191, 193-94 (D.D.C. 2001) ("courts consistently have held that telephone calls made into a district and other similar contacts are sufficient acts or transactions to establish venue") (citing cases); *John Nuveen & Co., Inc. v. N.Y. City Hous. Dev. Corp.*, 1986 WL 5780, at *3 (N.D. Ill. May 9, 1986) ("Venue will be sustained in a securities case where a defendant causes false or misleading information to be transmitted into a judicial district, even if the defendant never has been physically present in that district."); *Stern v. Gobeloff*, 332 F. Supp. 909, 911 (D. Md. 1971) ("Where an offer to sell securities is made by telephone by an offeror in one federal district and accepted by an offeree in another, part of the 'act or transaction constituting the violation' occurs in each district, and venue may be laid in either.").

Second, Defendants contend that even if venue otherwise were proper under federal venue statutes in the Northern District of Illinois, the forum selection clause would render venue "wrong" within the meaning of § 1406(a).  That argument, too, is incorrect.  In *LimitNone*, the plaintiff brought suit in Illinois, alleging breach of contract; the contracts at issue included forum selection clauses "providing that the 'exclusive venue for any dispute relating to this Agreement

-11-

shall be in state or federal courts within Santa Clara County, California.'" 551 F.3d at 574. The district court ordered the case transferred to the Northern District of California pursuant to § 1406(a), "holding that venue in Illinois was improper given the forum-selection clauses." *Id.* at 575. The Seventh Circuit held that § 1406(a) did not provide authority for the transfer because venue was properly laid in the Northern District of Illinois under § 1391, "notwithstanding the forum-selection clauses." *Ibid*. The court concluded that "[b]ecause the Northern District of Illinois was not an improper venue [under § 1391], § 1404(a), rather than § 1406(a), provided the authority for the transfer order." *Id.* at 575-76; *see also Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, (3d Cir. 2001) (forum selection clause cannot support dismissal under § 1406(a) where venue otherwise proper under § 1391); *Crescent Int'l, Inc. v. Avatar Communities, Inc.*, 857 F.2d 943, 944 n.1 (3d Cir. 1988) (same) (citing *Stewart Org.*, 487 U.S. at 28 n.8).

Governing precedent, then, holds that § 1406(a) provides no authority to dismiss or transfer this case. The second provision Defendants invoke, Rule 12(b)(3), provides that a case may be dismissed for "improper venue." Fed. R. Civ. P. 12(b)(3). Defendants argue that the forum selection clause, standing alone, renders venue "improper" under Rule 12(b)(3). Unlike the situation with § 1406(a), the Seventh Circuit routinely affirms the dismissal of lawsuits under Rule 12(b)(3) due to a forum selection clause. Most such decisions involve clauses that designate an arbitral forum, a state court forum, or a foreign forum. *See, e.g.*, *Kochert v. Adagen Med. Int'l, Inc.*, 491 F.3d 674, 676 (7th Cir. 2007) (clause designates "the State Court of Fulton County, Georgia"); *Abbott Labs.*, 476 F.3d at 422 (clause designates Japan); *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005) (clause designates arbitral forum); *Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 886 (7th Cir. 2004) (clause

designates Bermuda); *Paper Express*, 972 F.2d at 754-55 (clause designates Germany).  Those

decisions make perfect sense; where the alternative forum is not federal court, the case cannot be

transferred under §§ 1404(a) or (assuming venue were not otherwise proper under § 1391 or

some other federal venue statute) 1406(a), and if dismissal were not an option, the forum

selection clause would be neutered.

But Rule 12(b)(3) also permits dismissal where the forum selection clause designates a

federal forum.  The point is established by *Muzumdar v. Wellness International Network, Ltd.*,

*supra*, where the Seventh Circuit affirmed a Rule 12(b)(3) dismissal based on a forum selection

clause designating the state *or* federal courts in Dallas County, Texas.  438 F.3d at 761.  In so

holding, the court announced, without qualification: "A challenge to venue based upon a forum

selection clause can appropriately be brought as a motion to dismiss the complaint under Federal

Rule of Civil Procedure 12(b)(3)."  *Id*. at 760.  Because the clause in *Muzumdar* is materially

identical to the clause here, this case is subject to dismissal under Rule 12(b)(3).  *See*

*TradeComet.com LLC v. Google, Inc.*, __ F.3d __, 2011 WL 3068851, at *1 (2d Cir. July 26,

2011) ("a defendant may seek enforcement of a forum selection clause through a 12(b) motion to

dismiss, even when the clause provides for suit in an alternative federal forum"); *Slater v.*

*Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326, 1333 (11th Cir. 2011) (where clause designated a

federal or state court in Virginia, holding "that § 1404(a) is the proper avenue of relief where a

party seeks the transfer of a case to enforce a forum-selection clause, while Rule 12(b)(3) is the

proper avenue for a party's request for dismissal based on a forum-selection clause"); *see also*

*Salovaara*, 246 F.3d at 298 ("a 12(b)(6) dismissal is a permissible means of enforcing a forum

selection clause that allows suit to be filed in another federal forum").

-13-

Dismissal under Rule 12(b)(3), while an appropriate disposition, is somewhat unsatisfying. *LimitNone* does not address *Muzumdar*, so it is not clear why a forum selection clause should render an otherwise proper venue "improper" under Rule 12(b)(3) but not "wrong" under § 1406(a). If the interpretation of those two provisions were aligned, and § 1406(a) could be invoked to enforce a forum selection clause where venue otherwise was proper under § 1391 or some other federal venue statute, the court would have the option, not available under Rule 12(b)(3), to transfer this suit to the Northern District of California. The court would not be *required* to exercise that option because Schwarz is a sophisticated party who should have known that the only permissible forum for this litigation was the Northern District of California. *See M/V ORSULA*, 354 F.3d at 608 (district court may dismiss rather than transfer under § 1406(a) where parties were "commercially sophisticated and familiar with the forms of litigation in which they engage" and "[t]here was nothing obscure about the proper forum"). But the court would have chosen transfer over dismissal just the same. *See Giles v. Cont'l Cas. Co.*, 2010 WL 481233, at *5 (S.D. Ill. Feb. 5, 2010) ("Generally, courts prefer transferring a case to a jurisdiction where venue is proper as opposed to dismissing it … . Transfer … avoids the time-consuming and justice-defeating technicalities required to refile a case in [another] venue.").

There is a permissible solution: the court may consider whether transfer is appropriate under § 1404(a). *See LimitNone*, 551 F.3d at 575-76 (noting that "the district court mischaracterized the transfer as one under § 1406(a) when it was [§ 1404(a)] that provided the necessary authority," and affirming transfer under § 1404(a)); *Salovaara*, 246 F.3d at 299 ("there is nothing … that *precludes* a district court, faced with a Rule 12 motion based on a forum selection clause, from considering § 1404 factors to determine whether transfer is the better course"); 15 Wright, Miller, & Cooper, *Federal Practice and Procedure* § 1352, at Supp. 90

-14-

(2007 & Supp. 2011) ("Given Section 1404(a)'s emphasis on convenience and justice, transfer, rather than the harsh remedy of dismissal, seems to be the better approach whenever possible."). Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Supreme Court has held that a "forum-selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration … nor no consideration … , but rather the consideration for which Congress provided in § 1404(a)." *Stewart Org.*, 487 U.S. at 31.

In the Seventh Circuit, the "consideration for which Congress provided in § 1404(a)" has been found to reflect the view set forth by Justice Kennedy's concurrence in *Stewart*, which is that "a valid forum-selection clause is given controlling weight in all but the most exceptional cases." *Id*. at 33 (Kennedy, J., concurring). As the Seventh Circuit explained:

> We held in *Heller* [*Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286 (7th Cir. 1989)], and we repeat, that the signing of a valid forum selection clause is a waiver of the right to move for a change of venue on the ground of inconvenience to the moving party. 883 F.2d at 1293. If there is inconvenience to some third party of which that third party may not even be aware, or to the judicial system itself, then either party to the suit is free to move for a change of venue. But one who has agreed to be sued in the forum selected by the plaintiff has thereby agreed not to seek to retract his agreement by asking for a change of venue on the basis of costs or inconvenience to himself; such an effort would violate the duty of good faith that modern law reads into contractual undertakings. A party can seek to rescind a forum selection clause, … but if the attempt fails and the clause is held to be valid, then section 1404(a) may not be used to make an end run around it.

*Donovan*, 916 F.2d at 378 (some citations omitted). There is a "strong presumption" in favor of enforcing a mandatory and valid forum selection clause, which

> can be overcome … only if there is inconvenience to some third party ... or to the judicial system itself, as distinct from inconvenience to the party

> seeking [to avoid the clause].  That party's inconvenience has no weight if
> the clause is valid, because the party waived any objection based on
> inconvenience to it by agreeing to the clause.  But it could not waive rights
> of third parties, or the interest of the federal judiciary in the orderly
> allocation of judicial business, which is why a transfer motion [to the
> designated forum] can be [denied] even if there is a valid forum selection
> clause.

*IFC Credit Corp.*, 437 F.3d at 613.  The inconvenience to Schwarz of litigating in the Northern

District of California is irrelevant under § 1404(a).  The only basis for declining to enforce the

clause is that transfer "would impose significant costs on third parties or on the judicial system."

*Abbott Labs.*, 476 F.3d at 423.

Schwarz identifies three non-parties residing in Illinois who invested in Sellers Market

for whom he can "foresee the possibility of calling as … nonparty witnesses."  Doc. 50 at 13.

Schwarz does not say what testimony these witnesses would give, which is fatal to his argument.

*See Moore v. Motor Coach Indus., Inc.*, 487 F. Supp. 2d 1003, 1008 (N.D. Ill. 2007) (declining

to consider forum selection clause's impact on third-parties where defendant "has not provided

any affidavits or other actual evidence specifying third-party witnesses and their purported

testimony").  In any event, the three Illinois non-parties are beyond the subpoena power of the

Northern District of California, so if they are called as witnesses, they will have the option of

submitting to a deposition in Illinois rather than traveling to California.  This means that

transferring this case cannot impose any significant inconvenience on them.  Nor does or could

Schwarz offer any plausible reason why transfer would subject the judicial system to significant

costs or "interfere with the orderly allocation of judicial business."  *Donovan*, 916 F.2d at 376.

In light of these circumstances, the Agreement's forum selection clause will be enforced

by transferring this case to the Northern District of California under § 1404(a).

## Conclusion

Schwarz does not dispute that the term "any disputes arising out of or related to this Agreement" in the forum selection clause is broad enough to cover all of his claims, even those not sounding in breach of contract; nor does he dispute that all defendants may benefit from the clause, even those not party to the Agreement.  He thus forfeited any such arguments, which would have failed even if he had raised them.  *See Kochert*, 491 F.3d at 679 (forum selection clause "encompass[es] [the plaintiff's] fraudulent inducement claim"); *Am. Patriot Ins. Agency*, 364 F.3d at 888 (rejecting argument that "a plaintiff can defeat a forum-selection clause by its choice of provisions to sue on, of legal theories to press, and of defendants to name in the suit"); *id*. at 889 ("the existence of multiple remedies for wrongs arising out of a contractual relationship does not obliterate the contractual setting, does not make the dispute any less one arising under or out of or concerning the contract, and does not point to a better forum for adjudicating the parties' dispute than the one they had selected to resolve their contractual disputes").  Accordingly, this case is transferred to the Northern District of California pursuant to 28 U.S.C. § 1404(a).  Given this disposition, Restaurant Solutions' motion to dismiss for lack of personal jurisdiction is denied as moot.

September 7, 2011

_____
United States District Judge